# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JOHN SNOW, | )<br>) |
| Plaintiff, | )<br>)   3:08-cv-00046-RCJ-VPC |
| v. | ) |
| E.K. McDANIEL, *et al.*, | )   **ORDER** |
| Defendants. | ) |

Currently before the Court is the Report and Recommendation of the United States Magistrate Judge (#104)("Recommendation") entered on August 6, 2010, in which the Magistrate Judge recommends that this Court enter an Order granting in part and denying in part Defendants' Motion for Summary Judgment (#84). Upon review of the Recommendation and the record before the Court, the Court rejects the Recommendation and finds that Defendants are entitled to judgment as a matter of law.[1]

## BACKGROUND

Plaintiff John Oliver Snow ("Plaintiff") is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#12). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment. Id. Plaintiff names as defendants E.K. McDaniel, ESP Warden; Debra Brooks, ESP Associate Warden of Operations; Bruce Bannister, M.D., NDOC Medical Director; Adam Endel, ESP Associations Warden of Programs; Max Carter, ESP Physician's Assistant; and Steve MacArthur, M.D., ESP Physician, (collectively referred to herein as "Defendants") in

---

[1] Plaintiff filed Objections to the Recommendation on August 20, 2010 (#105).

both their official and individual capacities. Id.

Plaintiff originally filed his complaint on January 24, 2008 (#1). On March 6, 2008, Plaintiff amended the complaint (#12). Defendants initially moved to dismiss the claims asserted against them in Plaintiff's complaint (#33). This Court adopted the Magistrate Judge's Report and Recommendation, which dismissed all claims other than those in counts II and III (#43, 44). Counts II and III center on alleged violations of Plaintiff's Eighth Amendment rights. Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs. In addition, Plaintiff claims that Defendants have a custom and policy of not providing medical care to inmates.

The relevant facts are not disputed (#93, p. 3).

Plaintiff began to feel pain in his hips as early as November 2005. On January 24, 2006, Defendant MacArthur examined Plaintiff and did not comment on the condition of Plaintiff's hips. The medical notes simply indicate that Plaintiff complained of elevated pulse (#85-3, p. 8; MSJ 27).

One month later, an ESP nurse ordered an x-ray of Plaintiff's hip and prescribed pain medication. Id. The nurse informed Plaintiff that she would be placing him on a list of persons to be seen by an orthopedic surgeon (#85-1, p. 4; MSJ 4).

From February 2006 until September 2006, prison medical staff treated Plaintiff with a variety of pain medications, including Elavil and Ibuprofen (#85-4, pp. 23-25; MSJ 52-54). ESP Physician, Dr. Terrell Bishop, monitored Plaintiff's labwork, presumably to ensure the proper functioning of Plaintiff's kidneys. Id. p. 25; MSJ 55.

On September 15, 2006, an orthopedic surgeon (retained by the NDOC on contract), Dr. Mark Rhodes, examined Plaintiff and diagnosed him as having severe degenerative arthritis of the hips. Dr. Rhodes' notes in Plaintiff's chart provide the following: "Tylenol 500 mg . . . KOP IBU 400 mg for flare ups . . . long term THA (B)" (86-1, p. 35; MSJ 177). Defendants assert that this medical record indicates that Dr. Rhodes had both short and long term recommendations. In the short term, Dr. Rhodes recommended Tylenol and Ibuprofen; his long term recommendation was total hip surgery, also known as "total hip arthroplasty" or

"THA" (#84, p. 16).  The medical record does not indicate any time frame regarding the "long term THA."  Dr. Bishop reviewed Dr. Rhodes' consultation notes and ordered the appropriate medication (#85-4, pp. 27-28; MSJ 57-59).

In January 2007, Dr. Rhodes saw Plaintiff for a follow-up appointment (#86-1, p. 35; MSJ 178).  Dr. Rhodes recommended a trial of Indocin, a non-steroidal anti-inflammatory.  Id. Dr. Rhodes noted that "there is no option here other than surgery for relief" but did not indicate that surgery was required immediately.  Id.

On January 23, 2007, Dr. Rhodes' recommendation for surgery was sent to the NDOC Utilization Review Panel ("URP") (#86-2, p. 4; MSJ 195).  The URP is a panel consisting of institutional physicians, the Medical Director (Defendant Bannister), and a "Quality Assurance Specialist" who reviews any request for medical care by an outside provider (#86-3, p. 31; MSJ 265).  The URP denied the request for surgery (#86-2, p. 4; MSJ 195).  The URP notes read, "Okay to treat pain.  No joint replacements."  Id.  Pursuant to that direction, prison medical staff continued to treat Plaintiff with Tylenol and Indocin.  In May 2007, Plaintiff also received a Medrol dose pack, which consisted of Prednisone, and he continued to take a combination of the three medications until July 2007 (#85-4, p. 33; MSJ 63).

On July 17, 2007, Plaintiff sent an inmate medical request form ("kite") to Defendant Carter.  (#85-3, p.1; MSJ 20).  He asked, "If I can only have and take Indocin for 10 days a month, are you prescribing something in its place to ease my pain the other 20 days?"  Id. Defendant Carter replied to Plaintiff's question, "Nope - gonna let you suffer until you tell me its working or not - not much need in taking something that doesn't work."  Id.  One week later, on July 25, 2007, Dr. Bishop reviewed Defendant Carter's response.  Dr. Bishop noted, "Mr. Snow, I reviewed this kite response and totally disagree.  Pain meds are appropriate and I am ordering them today for your needed well being."  Id.  Although Plaintiff did not receive certain medications for pain from July 18 to July 25, Plaintiff's medical records indicate that he received Prednisone, a powerful steroid (#85-5, p. 39; MSJ 109).

Also on July 25, 2007, Dr. Bishop referred Plaintiff to the NDOC Regional Medical Facility ("RMF"), located at Northern Nevada Correctional Center ("NNCC")(#85-3, p. 11; MSJ

3

30). Dr. Bishop indicated that Plaintiff's referral was an "emergency" and noted that Plaintiff "needs hip surgery, creatinine levels rapidly rising on needed pain meds" (#86-1, p. 37; MSJ 180). Dr. Bishop also marked the answer "yes" where the form had the question, "Is this medical problem potentially life threatening?" Id. He also affirmatively answered the question, "Does this condition significantly affect quality of life?" Id. Plaintiff inquired of Dr. Bishop why prison officials needed to move him to the RMF, and Dr. Bishop responded that Plaintiff's "kidney function had deteriorated somewhat" (#97-3, p. 4).

On August 15, 2007, NDOC physician, Dr. Mar, examined Plaintiff and prescribed Tylenol with codeine for his pain and analgesic balm to be applied on his hip. (#85-4, p. 40; MSJ 70). The next day, Defendant Bannister examined Plaintiff and noted that Plaintiff "was functioning satisfactorily in his current living situation and in performance of any required activities." Id.; MSJ 32-33. Defendant Bannister changed Plaintiff's prescriptions for pain relief, increasing the amount of Tylenol in the morning and prescribing Tylenol with codeine in the evenings.

The URP ultimately approved Plaintiff for hip surgery on October 6, 2009. According to Plaintiff's Objections, the surgery had not yet taken place at this time (#105).

## DISCUSSION

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). In this case, the Court rejects the Recommendation filed by the Magistrate Judge. The Court finds that summary judgment is appropriate on Plaintiff's 42 U.S.C. § 1983 claims because there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

**I. Summary Judgment Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

4

248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. See id. "Summary judgment is appropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008)(citing United States v. Shumway, 199 F.3d 1093, 1103-04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See Celotex Corp., 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party

cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. See id. at 249-50.

**II. Eighth Amendment**

Plaintiff brings his suit under the Eighth Amendment, claiming that (1) the Defendants were deliberately indifferent to his serious medical needs and (2) that Defendants exhibited a policy of deliberate indifference to the medical needs of inmates. The Magistrate Judge recommended that this Court deny Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claims because there "appear[ed] to be an issue of fact as to whether [D]efendants' conservative course of treatment was medically acceptable" (#104, pp. 8-9). The Court, however, rejects this Recommendation and finds that summary judgment is appropriate.

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed. 2d 251 (1976). To prevail, a plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992)(on remand). The requisite state

///

of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S.Ct. 995, 998, 117 L.Ed. 2d 156 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(citing Estelle, 429 U.S. at 104, 97 S.Ct. 285). The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000)(citations omitted).

The United States Supreme Court has defined a strict standard which a plaintiff must meet in order to establish "deliberate indifference." See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994). Of course, negligence is insufficient. Id. at 835, 114 S.Ct. 1970. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S.Ct. 1970. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S.Ct. 1970. Rather, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. 1970. Thus, a defendant is liable if he knows that a plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S.Ct. 1970. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 847, 114 S.Ct. 1970. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S.Ct. 1970. However, obviousness *per se* will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 331 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d

7

1337, 1344 (9th Cir. 1981). "In other words, where a defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter of law." Id. (citing Estelle, 429 U.S. at 107-08, 97 S.Ct. at 292-93. To prevail under these principles, a defendant must show that "the course of treatment the doctors chose was medically unacceptable under the circumstances." Id.

In this matter, viewing all of the evidence in the record in the light most favorable to Plaintiff, the Court finds that summary judgment is appropriate. As noted in the foregoing, it is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Here, the evidence establishes that there was a difference in opinion regarding Plaintiff's medical treatment.

Plaintiff has established that he had a serious medical need. Plaintiff's hip condition caused him substantial pain, was worthy of treatment, and affected his individual activities. Surgery was recommended by Dr. Rhodes. After examining Plaintiff, Dr. Rhodes prescribed pain medication to treat Plaintiff's degenerative arthritis, and noted that surgery was recommended for his long-term treatment. Following Dr. Rhodes' consultation, medical officials began to treat Plaintiff with pain medication.

Dr. Rhodes later stated that surgery was the only ultimate option for relief; however, medical officials continued to treat Plaintiff with pain medications until his surgery was approved in 2009. Because Dr. Rhodes stated that surgery was ultimately necessary for Plaintiff, the allegations in Plaintiff's complaint appear to stem from Plaintiff's disagreement with the conservative treatment plan initially taken by medical officials. In other words, Plaintiff believed that he was entitled to surgery following Dr. Rhodes' consultation, rather than treatment through pain medication. However, this disagreement, on its own, is not sufficient to establish an Eighth Amendment violation. In this regard, the various medical reports, physicians' progress notes, and other undisputed evidence show that Plaintiff received continuous medical care and accommodations from Defendants during the relevant period, even though it was not the immediate surgery he desired. Plaintiff has provided no evidence

to support that the use of pain medications, as prescribed by the treating medical officials, was medically unacceptable under the circumstances as required by the Ninth Circuit. See <u>Jackson v. McIntosh</u>, 90 F.3d at 331. At most, the evidence establishes that Plaintiff believed that he should have been immediately approved for surgery, and that there were differences of opinion regarding when that surgery should occur.

Based on the foregoing, the Court finds that summary judgment on Plaintiff's Eighth Amendment claims is appropriate. The Court rejects the Recommendation submitted by the Magistrate Judge and grants the motion for summary judgment.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (#84) is GRANTED.

The Clerk of the Court shall enter Judgment accordingly.

DATED: This 24th day of August, 2010.

_____
United States District Judge